# McCoy v. Reid.

[No. 21,421.    Filed April 20, 1909.]

1. STATUTES.—*Repeal.—Indeterminate Sentence.—Good Time Law. —Prisons.—Habeas Corpus.*—The act of 1883 (Acts 1883, p. 191, §9886 et seq. Burns 1908), providing that prisoners shall be entitled to certain credits for good behavior, so far as applicable to the Indiana State Prison, was repealed by implication, as to those subsequently imprisoned, by the indeterminate sentence law of 1897 (Acts 1897, p. 219, §§1906a, 8230-8232 Burns 1901) and the act of 1899 (Acts 1899, p. 174, §9880 Burns 1908) extending the provisions of the indeterminate sentence law to those imprisoned before its passage. p. 184.

2. STATUTES.—*Repeal.—Party Entitled to Question.—Prisons.—Indeterminate Sentence Law.—Habeas Corpus.*—One who committed a crime and who was also sentenced after the passage of the in-

determinate sentence law (Acts 1897, p. 219, §§1906a, 8230-8232 Burns 1901) cannot question the validity thereof as to persons who committed crimes before, and who were sentenced after the passage of such law. p. 188.

From Laporte Superior Court; *Harry B. Tuthill,* Judge.

Action by Thomas J. McCoy against James D. Reid. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*Haywood & Burnett* and *John F. McHugh,* for appellant.
*James F. Gallaher, Frank E. Osborn* and *William A. McVey,* for appellee.

JORDAN, C. J.—Appellant, a prisoner in the Indiana State Prison, petitioned the Laporte Superior Court to issue a writ of *habeas corpus* against appellee, James D. Reid, warden of said prison. By virtue of said writ he sought to secure his discharge from the alleged unlawful restraint and imprisonment by said warden, upon the grounds set forth in his petition. The writ was granted by the court, and thereby appellee was commanded to have the body of appellant, Thomas J. McCoy, before the court at the time and place therein fixed. In obedience to the command appellee produced appellant before the court, and thereupon filed a written motion to quash the writ, alleging, as reasons therefor, among others, the following: (1) Because the complaint upon which said writ of *habeas corpus* was issued does not state facts sufficient to authorize the issuance of a writ of *habeas corpus;* (2) because it appears from the averments of the complaint upon which said writ of *habeas corpus* was issued that Thomas J. McCoy, the person named in the complaint, was detained in the Indiana State Prison, at the time the writ was applied for and issued, under a judgment of the White Circuit Court. The court sustained the motion of appellee and quashed the writ, to which appellant at the time excepted, and thereupon the court rendered judgment against him, to which he also excepted. From this judgment he appeals to

this court, and assigns as errors the ruling of the court in quashing the writ of *habeas corpus* and rendering judgment against him in favor of appellee.

The facts in this case, briefly stated, appear to be as follows: Appellant was tried in the White Circuit Court upon an indictment by a grand jury, charging him with having violated a criminal statute of this State in having received and accepted a deposit of money in a bank in this State of which he was an officer at a time when such bank was insolvent, whereby said bank deposit was lost to the depositor. On June 19, 1906, he was convicted and sentenced by the White Circuit Court to be imprisoned in the Indiana State Prison for an indeterminate time of not less than one year nor more than three years; these periods of imprisonment being respectively the minimum and maximum for a violation of said statute. By virtue of said sentence and judgment in the White Circuit Court he was, on June 21, 1906, confined as a prisoner in the Indiana State Prison, located at Michigan City, Laporte county, Indiana, and has been so confined in said prison from that day forward, not having been paroled nor pardoned. Since his commitment he shows that he has performed in a faithful manner the duties assigned to him, and that no infraction of the rules and regulations of the prison and laws of the State has been recorded against him. He claims in his petition that, by reason of such facts, and his good behavior generally, he is entitled to six months' diminution of time, to be deducted from his sentence of three years, and that by reason thereof the period of his maximum imprisonment expired on December 19, 1908, and that since this latter date he has been unlawfully restrained of his liberty by appellee, the warden of said prison. He predicates his right to a discharge upon the provisions of the act of March 8, 1883, entitled "An act concerning the behavior and time of convicts in the State Prison and the Indiana Reformatory for Women and Girls." Acts 1883, p. 191, §9886 *et seq.* Burns 1908. His contention

is that he is restrained and detained in said Indiana State Prison by appellee, as warden thereof, upon the assumption that the aforesaid act of March 8, 1883, is not in force, but was repealed by the indeterminate sentence law of 1897. It is admitted that the offense of which appellant was convicted was committed by him long after the passage of both of the indeterminate sentence statutes, one of which applied to the Indiana Reformatory, and was approved February 26, 1897 (Acts 1897, p. 69, §8253b *et seq.* Burns 1897), and the other, which was applicable to the Indiana State Prison, was approved March 8, 1897 (Acts 1897, p. 219, §§1906a, 8230-8232 Burns 1901). Each of these acts went into effect on April 1, 1897.

The first section of the good behavior statute (§9886, *supra*) provides that "every convict who is now in, or who may hereafter be confined in, the penitentiaries of the State of Indiana, or in the Indiana Reformatory for Women and Girls, and who shall have no infractions of the rules or regulations of the prisons or laws of the State recorded against him, and who performs in a faithful manner the duties assigned him, shall be entitled to the diminution of time from his sentence as appears in the following table for the respective years of his sentence, and *pro rata* for any part of a year when the sentence is for more or less than a year." Here follows a table, setting forth the time to be allowed to the convict and deducted from his sentence. First year, one month; second year, two months, and so on.

Section two (§9887, *supra*) provides that "in case any convict shall knowingly violate any of the rules or laws of the penitentiaries of the State, as above provided, and who is entitled to any diminution of his sentence by the provision aforesaid, he shall forfeit, for the first offense [if he has gained that much], two days; for the second offense, four days; * * * and for more than four offenses, the warden shall have the power, at his discretion, to deprive him of any promotion for all of the good time gained."

Section three (§9888, *supra*) provides that "the warden, in computing the diminution of the time of those convicts now in the penitentiaries, shall allow them the good time granted for the years or year, or part of a year, of their unexpired sentence."

By an act approved March 1, 1899 (Acts 1899, p. 174, §9880 Burns 1908), the legislature declared that the act approved March 8, 1897, *supra*—being the indeterminate act in respect to the state prison—should apply and extend to all persons imprisoned in the state prison, whether imprisoned therein before or after the taking effect of said act of March 8, 1897. Counsel for appellant contend that there is no repugnance or conflict between the indeterminate statute of 1897, *supra,* and the good time or commutation act of 1883, *supra.* Therefore, they insist that the latter act is not repealed, but is in full force and effect and controls in the case at bar. They argue that the statutes providing, as does the good behavior act of 1883, *supra,* for a commutation of the sentence of the prisoner or reduction of the time of imprisonment on account of his good behavior while in prison, enter into and become part of the judgment of conviction, and in support of this contention they cite *Woodward* v. *Murdock* (1890), 124 Ind. 439, 444; *Ex parte Wadleigh* (1890), 82 Cal. 518, 23 Pac. 190; *Opinion of Justices* (1859), 13 Gray 618; *In re Canfield* (1894), 98 Mich. 644, 57 N. W. 807; *Murphy* v. *Commonwealth* (1899), 172 Mass. 264, 52 N. E. 505, 43 L. R. A. 154, 70 Am. St. 266.

Upon this view of the question counsel further contend that the indeterminate sentence law cannot be held to have repealed the good behavior statute of 1883, for if such repeal applied to prisoners whose crimes were committed before the enactment of the indeterminate sentence law, but who were tried and convicted after it went into force and effect, it would be, as to them, *ex post facto,* and therefore unconstitutional. Upon this proposition, among other cases, they cite *Strong* v. *State* (1822), 1 Blackf. 193; *Dinckerlocker* v.

*Marsh* (1881), 75 Ind. 548; *Kring* v. *Missouri* (1882), 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506; *Murphy* v. *Commonwealth, supra; In re Canfield, supra; People, ex rel.,* v. *Deyo* (1905), 181 N. Y. 425.

Counsel assert that if the indeterminate sentence act of 1897, *supra,* repealed the good behavior law of 1883, *supra,* the effect of such repeal would be to increase the punishment of crime. They propound this question: ''Is the appellant entitled to the diminution of time from his sentence as provided in the good behavior law of 1883? This is the only question involved in this case:'' They contend that the good behavior law of 1883 is still in force, unless it is repealed by the indeterminate statute of 1897. They claim that, inasmuch as the latter act contained no repealing clause, therefore, if it repealed the statute of 1883, the repeal is by implication, which the law does not favor.

Much argument of appellant's counsel is devoted to a criticism of the decision in the appeal of *Davis* v. *State* (1898), 152 Ind. 34, 71 Am. St. 322. This criticism is especially directed against the following extract in the opinion in that case. ''The contention that the act is *ex post facto* because it repeals the good time law cannot be sustained. That law relates only to rules for the government of the prison officials. The indeterminate sentence law simply substituted a new and different method of crediting good time to the convict. The good time law does not apply to one sentenced under the indeterminate sentence law or the reformatory act.'' It is insisted that the expression just quoted was added to the original opinion at the request of the Attorney-General, upon his petition for a rehearing in the case, in which he insisted that the question as to whether the indeterminate law of 1897 (Acts 1897, p. 219, §§1906a, 8230-8232 Burns 1901) repealed by implication the commutation or good time statute of 1883, *supra,* was fairly in issue under the facts, and should be definitely decided by the court. Counsel insist that the point in respect to the repeal of the

good time law by the indeterminate statute was not involved in the case of *Davis* v. *State, supra,* and therefore what was said or expressed therein in regard to its repeal, was but a mere dictum and is no authority. It is not essential, however, in the case at bar, that we enter upon a review of that decision, for the facts in that case and in the one at bar are unlike, and appellant is not in a position to claim that any of his substantial rights have been infringed or in any manner impaired by the repeal of the good behavior act of 1883. Aside from and without regard to anything expressed in *Davis* v. *State, supra,* we, however, are fully confirmed that the statute of 1883, *supra,* was repealed or superseded by the indeterminate sentence law of 1897 here involved. The provisions of the former act do not fit into those presented by the latter for dealing with the discipline, management, parole and final liberation or discharge of prisoners confined thereunder in the Indiana State Prison. An examination of the provisions of the good time statute and those of the indeterminate act will fully reveal the inconsistencies of the one with the other, and the inapplicability of the former to the provisions of the latter. The two statutes cannot stand together, and under their provisions operate consistently or in unison in the same case. *Murphy* v. *Commonwealth, supra; State* v. *Tyree* (1904), 70 Kan. 203, 78 Pac. 525, 3 Am. and Eng. Ann. Cas. 1020; *In re Campbell* (1904), 138 Mich. 597, 101 N. W. 826.

As to what would be the result of the repeal of the act of 1883, *supra,* upon the rights of prisoners who were convicted and sentenced under the indeterminate act of 1897 for crimes committed by them prior to the taking effect of this latter statute, or as to whether it should be held or construed as prospective or retrospective, are questions which, under the facts in this case, are not involved, hence we are not required to and do not determine them, for they in no manner concern appellant, who, as shown, was convicted for an offense committed after the tak-

ing effect of the indeterminate statute, under which law he was sentenced.

The first section of the indeterminate sentence law (§1906a, *supra*), provides that "whenever any male person thirty years of age or over, shall be on trial for any felony, which is punishable by imprisonment in the State's prison, except treason, and murder in the first or second degrees, the court or jury trying said cause shall ascertain only whether or not the person is guilty of the offense charged; if more than one offense is charged, then it shall be found by such court or jury trying such person as to which of such offenses such person is guilty, if of either, and of which such person is not guilty, if of either. Instead of pronouncing upon such person a definite time of imprisonment in the state prison for a fixed term, after such finding or verdict, the court * * * shall pronounce upon such person an indeterminate sentence of imprisonment in a State's prison for a term, stating in such sentence the minimum and maximum limits thereof, fixing as the minimum time of such imprisonment the term now or hereafter prescribed as the minimum imprisonment for the punishment of such offense, and as the maximum time, the maximum time now or hereafter prescribed as a penalty for the commission of such offense." See §2152 Burns 1908, Acts 1905, p. 584, §267.

Section two (§8230, *supra*) provides that "the warden of each prison in this State, the board of directors, the chaplain, and physician of such prison shall constitute a board of commissioners of parole prisoners for such prison," etc.

Section three (§8230a, *supra*) provides that the board of commissioners of parole prisoners shall meet from time to time, etc., and at each meeting of the board "every prisoner confined in said prison upon an indeterminate sentence, whose minimum term of sentence has expired, shall be given an opportunity to appear before the board and apply for his release upon parole, or for an absolute discharge as hereinafter provided, and said board is prohibited from enter-

taining any other form of application or petition for the release upon parole or absolute discharge of any prisoner.''

By section four (§8230b, *supra*) it is prescribed that ''the wardens of such prisons shall cause to be kept at each state prison a full and accurate record of each prisoner therein confined upon an indeterminate sentence as aforesaid, which record shall include a biographical sketch covering such items as may indicate the causes of the criminal character or conduct of the prisoner, and also a record of the demeanor, education and labor of the prisoner while confined in such prison.''

Section five (8230c, *supra*) provides that ''if it shall appear to said board of commissioners of parole prisoners, from a report by the warden of such prison or upon an application by a convict for release on parole as hereinbefore provided, that there is reasonable probability that such applicant will live and remain at liberty without violating the law, then said board of commissioners may authorize the release of such applicant upon parole, and such applicant shall thereupon be allowed to go upon parole outside of said prison walls and enclosure upon such terms and conditions as said board shall prescribe, but to remain while so on parole, in the legal custody and under the control of the agent and warden of the state prison from which he is so paroled, until the expiration of the maximum term specified in his sentence, as hereinbefore provided, or until his absolute discharge as hereinafter provided.''

Section six (§8230d, *supra*) provides for the arrest and retaking of a paroled prisoner who has violated his parole.

Section eight (§8230f, *supra*), among other things, provides for a hearing to be given to a prisoner who has been arrested or retaken for violating his parole.

Section nine (§8230g, *supra*) provides that ''if it shall appear to said board of commissioners that there is reasonable probability that any prisoner so on parole will live and remain at liberty without violating the law, and that his absolute dis-

charge from imprisonment is not incompatible with the welfare of society, then said board of commissioners shall issue to said prisoner an absolute discharge from imprisonment upon such sentence.''

By section ten (§8231, *supra*) it is provided that nothing in the act ''shall be construed to impair the power of the Governor of the State to grant a pardon or commutation in any case.''

By the indeterminate sentence act of 1897, *supra*, certain changes were made in respect to the names of the officials of the prisons and the names of the two state prisons as then existing. The State Prison South was changed to the Indiana Reformatory, and instead of a warden for that prison there was substituted a superintendent, and the name of the Indiana State Prison North was changed to that of the Indiana State Prison. An examination of the provisions of the indeterminate statute, hereinbefore set forth, fully discloses that there is nothing therein which can be construed to entitle a prisoner, as a matter of right, to any reduction of the period of his sentence on account of his good behavior while in prison. This is one of the essential features wherein that statute and the good behavior act of 1883 are inconsistent. In *Woodward* v. *Murdock* (1890), 124 Ind. 439, appellant had been convicted of an offense and sentenced by the court to be imprisoned in the Indiana State Prison North for a period of five years from May 25, 1885. He claimed that, on account of the time to be deducted from the period of his imprisonment for his good behavior as a prisoner, under the act of 1883, *supra*, his term expired on December 13, 1889, and that as a matter of right he was entitled to be discharged from prison on that day. This court, in construing said act of 1883 in that appeal, sustained this contention, and held that the convict was entitled to his discharge. In passing upon the question the court said: ''We think appellant was entitled to his discharge at the expiration of five years from the date of his sentence, less the time for which

he was entitled to credit as good time earned.   *   *   *   It was only by virtue of the judgment of the Marion Criminal Court that the appellant was held as a prisoner; it, by its very terms, only condemned him for five years from its date less any time for which under the law he might be entitled to credit.   *   *   *   The law allowing him credit for good time entered into the judgment as if written therein, and, therefore, by the very language of the judgment appellant's time expired on December 13, 1889.''

Quite a different construction, however, has been placed by this court upon the indeterminate act of 1897, *supra,* in *Terry* v. *Byers* (1903), 161 Ind. 360, the appellant, who was a prisoner in the Indiana Reformatory, under the indeterminate sentence law applicable to that prison, claimed that he was entitled to a discharge, on the ground that he had faithfully observed and obeyed all the rules and requirements prescribed by the board of managers of that institution.   This claim the court denied, and, in construing the provisions of the indeterminate sentence statute relating to the rules and regulations for the parole or conditional release of prisoners and for their absolute discharge, which provisions are the same, in effect, as the provisions of the indeterminate law here involved, said:   ''The punishment to be adjudged in each case of conviction is for the maximum time prescribed by the statute.   This term may be shortened by the good behavior of the person in custody, and the board of managers of the reformatory is authorized, in its discretion, to terminate such imprisonment when the rules and requirements of the reformatory have been faithfully observed.   This discretion of the board is not subject to the supervision or control of the courts.   It resembles that usually exercised by a board of pardons, or by the Governor of this State under the authority committed to him by the Constitution to grant reprieves, commutations of sentences, and pardons.   The law confers upon the person imprisoned in the reformatory no absolute right of discharge under any

circumstances until the maximum term of imprisonment prescribed as the punishment for the crime of which such inmate has been adjudged guilty has expired. The word 'may,' as used in the latter part of section eight, *supra* [Acts 1897, p. 69, §1906b Burns 1901], must be understood in its usual acceptation, and as granting to such board permission, liberty, or discretion to terminate such imprisonment, and not as imposing on the board a duty to be performed in all cases whether such board believes the person in prison entitled to his discharge or otherwise.''

The construction placed on the act of 1883, *supra,* in *Woodward* v. *Murdock, supra,* and that accorded to the indeterminate statute in *Terry* v. *Byers, supra,* show that the contention of appellant's counsel, that there is no conflict or repugnance between the provisions of the two statutes, is not sustained. The inconsistencies between the provisions of these two acts are obvious; therefore it is not necessary that all be referred to or pointed out specifically. That the act of 1883, *supra,* was repealed by implication by the indeterminate act in question, follows as a logical conclusion. For the reasons herein given, appellant's demand that he be discharged from prison before the expiration of his maximum term, which is three years from the date of his sentence (§9839 Burns 1908, §6134 R. S. 1881), must be denied. The judgment of the lower court was a correct result, and is therefore affirmed.