## ALBERT WALLACE

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Springfield January 16, 1896.*

1. APPEALS AND ERRORS—*conviction of murder—when admission of incompetent evidence will not reverse.* The admission of incompetent evidence as to a motive for the crime and the circumstances attending it is not cause for reversal of a conviction of murder, where both the killing and the motive are established, beyond reasonable doubt, by other and competent evidence.

2. INSTRUCTIONS—*defective instruction may be cured by others.* An instruction that if the death in question was occasioned by injuries inflicted by defendant as charged in the indictment or some of its counts the law would pronounce it murder, is not objectionable, as allowing a conviction on a count which was quashed, where another instruction states that the defendant is only to be tried upon the other counts, and that that in question has been quashed.

3. CRIMINAL LAW—*construction of statute as to time of executing death sentence.* Fixing time for the execution of a death sentence beyond the twenty-five days from that upon which it is pronounced is not authorized by the proviso (Crim. Code, div. 14, sec. 1,) "that for good cause the court or Governor may prolong the time," but such proviso relates to the power of the court or Governor after judgment or sentence has been pronounced.

4. NEW TRIAL—*when leave will be given to enter proper judgment without a new trial.* A new trial will not be ordered, upon reversal of a judgment imposing the death sentence on a conviction for murder, because of error in the time fixed for execution, where a fair and impartial trial has been had and a legal verdict rendered, but the cause will be remanded, with leave to the prosecuting attorney to move for entry of a proper judgment of sentence upon the verdict.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. N. W. GREEN, Judge, presiding.

GEORGE B. FOSTER, W. A. POTTS, W. L. PRETTYMAN, and F. VELDE, for plaintiff in error:

As to the admission of improper evidence on the part of the People, see *Coon* v. *People,* 99 Ill. 368; *Bartholomew* v. *People,* 104 id. 609; *Linn* v. *Sigsbee,* 67 id. 75; *Pennsylvania Co.* v. *Conlan,* 101 id. 93; *Flynn* v. *Fogarty,* 106 id. 264; *Wil-*

*liams* v. *People,* 54 id. 422; *Pennsylvania Co.* v. *Connell,* 127 id. 421; *Cannon* v. *People,* 141 id. 277; *Railway Co.* v. *Welsh,* 155 id. 511; *Funk* v. *Babbitt,* 156 id. 409.

That the court below improperly gave the third instruction on behalf of the People, we cite *Baxter* v. *People,* 3 Gilm. 381; *Rolling Stock Co.* v. *Wilder,* 116 Ill. 105; *Montag* v. *People,* 141 id. 82.

The court below erred in sentencing Wallace, on September 28, 1895, to be hanged on October 28, 1895, that being more than twenty-five days from date of sentence. Crim. Code, sec. 499; *White* v. *People,* 81 Ill. 333; *Fielden* v. *People,* 128 id. 595; 16 Crim. Law Mag. 17; *Ex parte Cross,* 146 U. S. 271; *People* v. *Nelson,* 156 Ill. 372, and cases cited; Potter's Dwarris, 68, 72; *Hardman* v. *Bowen,* 39 N. Y. 196.

MAURICE T. MOLONEY, Attorney General, (T. J. SCO-FIELD and M. L. NEWELL, of counsel,) for the People:

If we must concede that the judgment and sentence were erroneous, we insist that the error affects nothing prior to the pronouncing of such judgment and sentence. And if, as we contend, there are no other errors in the record, the case can only be remanded, with directions to the circuit court of Tazewell county to enter a proper judgment upon the verdict. *Harris* v. *People,* 130 Ill. 465; *White* v. *People,* 81 id. 337; *Cole* v. *State,* 5 Eng. (Ark.) 318; *Martin* v. *Barnhardt,* 39 Ill. 9; *Kelly* v. *State,* 3 S. & M. 518 ; *Baxter* v. *People,* 3 Gilm. 368.

G. F. SALTONSTALL, State's Attorney, and T. N. GREEN, also for the People:

A just judgment will not be reversed merely because a leading question is allowed to be answered, although it may be error. *Bulson* v. *People,* 31 Ill. 409.

This court has repeatedly decided that where the verdict is clearly right upon the evidence, an error of so little significance that it could not reasonably have affected the result should not reverse. *Belt* v. *People,* 97 Ill. 468.

Where the result reached by a judgment is clearly right, it will never be reversed for errors which do not affect the substantial merits of the case. *Wilson* v. *People*, 94 Ill. 327; *Zimmer* v. *People*, 111 id. 49.

Were it even true that the jury had no notice of this fourth count having been quashed, we ask, could it have possibly worked any injury to the defendant therein, being, as it was, so nearly identical with other counts therein? This court has often held that, though erroneous, a judgment of conviction in a capital case will not thus be reversed. *Kennedy* v. *People*, 40 Ill. 488; *Spies* v. *People*, 122 id. 9; *Ritzman* v. *People*, 110 id. 371; *Leach* v. *People*, 53 id. 318.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the September term of the circuit court of Tazewell county, 1895, plaintiff in error was convicted of the crime of murder and the death sentence pronounced against him. To reverse that judgment he prosecutes this writ of error.

Three grounds of reversal are insisted upon: First, the trial court admitted improper evidence; second, it gave an improper instruction to the jury; and third, it erred in sentencing the defendant to be hanged on the 28th day of October, 1895, being more than twenty-five days from the date of sentence. Before proceeding to pass upon the several questions thus raised, a brief review of the facts of the case shown by the evidence will materially aid us in arriving at a correct conclusion upon the questions raised, and as to the proper final disposition of the case.

The charge in the several counts of the indictment is, that the accused, Albert Wallace, killed and murdered one Belle Bowlby. The killing is not denied. The deceased was a sister of the defendant. She was the wife of John Bowlby. They resided in Tazewell county on what was known as the "Wallace farm." On the night of the 19th of February, 1895, between eight and nine o'clock,

there were present in the family dwelling the husband and wife, Lawrence Lyman, Jesse Strawbridge, the defendant, Miss Annie Krile, and a child of Mrs. Bowlby, the deceased, five or six years of age. Miss Krile was playing a piano in the room in which all these parties were, and others were singing. While this was going on the defendant left the room, and almost immediately thereafter a shot was fired through a window into the room, which struck John Bowlby upon the face and hand, inflicting serious wounds. A second shot immediately followed, by which one of the eyes of Lyman was put out. Thereupon the deceased ran to an open door, and as the witness Jesse Strawbridge says: "I saw her. She was standing in the door and said, 'Oh, my God! where is my little girl?' Albert was about twenty feet from the fence at that time. He shot her. I don't know that she gave him any provocation. I did not see her do anything. I was about thirty yards from Albert Wallace then. I did not see him do anything further. He shot her with a shot-gun. I saw him do it." So far from this testimony being in any way contradicted, it is fully corroborated by that of John Bowlby, Lawrence Lyman and Annie Krile. That the defendant, Albert Wallace, fired the several shots is not and cannot, in the light of the undisputed testimony of these several witnesses, be denied or even questioned. It is equally clear and undisputed that Belle Bowlby died from the effects of one of them on the evening of the 21st of the same month.

Without attempting in this opinion to review the evidence tending to prove a motive 'for the act, it is not only apparent to the impartial mind, but established by undisputed testimony neither objected to upon the trial nor in any way objectionable, that in making his murderous assault upon this family and deliberately shooting his defenseless sister the defendant was actuated by a most wicked and malicious spirit of malice.

The contention that the court erred in the admission of testimony is, in our opinion, wholly without merit. It is based upon the claim that leading questions were allowed to be put to witnesses for the People for the purpose of proving a motive for the crime. The witnesses for the prosecution were allowed to state what they saw upon arriving at the house after the shooting, and to describe the position in which the party firing the shots stood, from tracks; how he must have held the gun in order to fire the shots; the wounds upon the persons of John Bowlby and Lawrence Lyman. Much of this testimony went to the jury without objection, and we are unable to see why it was not competent, in connection with all the other testimony in the record. If, however, all that counsel for the plaintiff in error says, or that could be said, as to its materiality and competency were admitted, it would be trifling with justice to reverse the judgment of the circuit court on that ground. As we have already said, both the killing and the motive for the crime are established, beyond all reasonable doubt, by other evidence so direct and positive and so clearly competent that no objection whatever is made to it. The testimony of the eye-witness to the act, Jesse Strawbridge, proves the shooting accompanied with every element of the crime of murder. Malice must be implied from the act, both because there is no pretense that there was any considerable provocation for it and because "all the circumstances of the killing show an abandoned and malignant heart." It is also to be observed that by the express provisions of section 155 of our Criminal Code, the killing being proved, the burden of proving circumstances of mitigation, or to justify or excuse the homicide, devolved upon the accused, unless the proof on the part of the prosecution (of which there is no pretense) sufficiently manifested that the killing only amounted to manslaughter or was justifiable.

The third instruction given on behalf of the People is as follows:

"If the jury believe, from the evidence in this case, beyond all reasonable doubt, that Belle Bowlby received, on the 19th day of February, 1895, injuries by the means and in the manner set forth in the first, second or third counts of the indictment herein, and further believe, from the evidence, beyond all reasonable doubt, that said injuries were inflicted upon the person of Belle Bowlby by the defendant, Albert Wallace, as charged in the indictment herein, or some of said counts thereof, and further believe, from the evidence, beyond all reasonable doubt, that the death of Belle Bowlby was occasioned by reason of said injuries at the time and in the manner charged in said indictment or some of said counts thereof, then, in that state of the proof, the law would pronounce it murder."

The objection urged to it is, that it was calculated to lead the jury to understand that the defendant might be convicted on the fourth count of the indictment. If that instruction stood alone there might be some plausibility in this position, though even then we should regard it rather technical than substantial. Here, however, the learned judge, who seems to have been exceedingly careful to fully instruct the jury both as to the rights of the defendant and the People, expressly told them by the second instruction, "that the defendant, Albert Wallace, is to be tried by the jury only upon the first, second and third counts of the indictment herein, the fourth count of said indictment having been quashed." It cannot be seriously contended that any jury, with these two instructions before them, would understand they might base a verdict of guilty on the fourth count of the indictment.

This disposes of the only errors complained of preceding the verdict of the jury. We will, however, add, that we have twice examined this record with the care which its importance demands,—first on the application

for *supersedeas*, and now on the final hearing,—and we entertain no doubt that the plaintiff in error was fairly tried and properly convicted. In fact, under the evidence, neither objected to nor now claimed to have been incompetent for any reason, no jury could have discharged its sworn duty by returning any other than a verdict of guilty of murder, and unless it could be said that the death penalty ought never to be inflicted, the justice of that sentence in this case cannot be questioned.

We come now to a consideration of the point that the court erred in fixing the time of the execution more than twenty-five days from that of pronouncing sentence.

Section 1, division 14, of our Criminal Code, after providing the manner of inflicting the death penalty, authorizes the court to fix the date of execution, but requires the time so fixed to be "not less than fifteen nor more than twenty-five days from the time sentence is pronounced : *Provided,* the day set shall not occur before the tenth day of the term of the Supreme Court occurring (in either of the grand divisions) next after the pronouncing of the judgment : *And provided,* that for good cause the court or Governor may prolong the time." (Hurd's Stat. 1893, 538, 539.) It is admitted here that the day of execution was fixed two days after the expiration of twenty-five days after the time sentence was pronounced, nor is it claimed that to do so was necessary in order to comply with the requirement in the proviso in regard to the next session of the Supreme Court. We do not think the second proviso can properly be construed as authorizing the court to extend the time fixed by the statute within which the execution shall take place. That proviso, we think, clearly relates to the power of the court or Governor after judgment of sentence has been pronounced. It is true the error in this case would seem to be one in favor of the plaintiff in error, and was evidently made inadvertently by the court in a merciful disposition to prolong the period of his life as long as could be legally done. We cannot, however,

say, in view of the peremptory language of the statute and the effect which a different ruling might have upon other cases, that the error is one which should not be corrected. Many reasons will suggest themselves for providing that executions should be within a reasonable time after sentence. The legislature has seen proper to expressly fix that period. Of course, we appreciate the force of the suggestion that this is an error of which the defendant should not be heard to complain, and that it will be time enough to protect the public against any irregularity of the kind when it complains. Still, we are not disposed, in a case of this kind, to say that we should treat it as wholly non-prejudicial to the plaintiff in error, or immaterial. Holding it a substantial error, it remains to be determined what judgment of reversal should be entered. This question, under the previous decisions of this court, is one of easy solution.

In *Baxter* v. *People*, 3 Gilm. 368, the conviction was for the crime of murder. The verdict was received and judgment of sentence pronounced on Sunday. It was held that the verdict might be received on that day but that the judgment was void, and it was said (p. 389): "The judgment of the circuit court is declared to be absolutely null and void, and the cause is remanded, with a *procedendo* to that court to render the judgment of the law upon the verdict of the jury."

In *White* v. *People*, 81 Ill. 333, sentence and judgment were pronounced on the 22d day of January, 1875. The day set for execution was the 12th day of February, 1875. This was before the tenth day of the next term of the Supreme Court, and was expressly forbidden by the statute. It was erroneous, because it deprived, or at least restricted, the right of the accused to remove his case to the Supreme Court. The court, by Mr. Justice DICKEY, said (p. 337): "If this were the only error in this record, the case might be remanded for a proper judgment upon the verdict."

In the later case of *Harris* v. *People*, 130 Ill. 457, in which we held that in cases of felony it was reversible error to sentence the defendant in his absence, in disposing of the question now before us, after full consideration, we said (p. 464): "The only error in the record of which the defendant can complain, consisting, as it does, of the imposition of sentence upon him in his absence, it will only be necessary, in order to purge the record of that error, to reverse and set aside the proceedings back to the point where the error was committed, without disturbing any of the anterior proceedings," and the practice adopted in *Martin* v. *Barnhardt*, 39 Ill. 9, was cited as in point.    In the latter case, it being found that there was no reversible error in the record prior to the verdict, which verdict was sufficient to sustain a judgment, but that no sufficient judgment had been entered, it was held that to correct the error it was only necessary that the case should be remanded to the trial court, with leave to the plaintiff to move for a proper judgment on the verdict.    This practice is in harmony with that adopted in the decisions of other courts in like cases, and commends itself to our sense of reason and justice.

The defendant having been accorded a full, fair and impartial trial, upon which no errors of law intervened, and a legal verdict returned against him, why should he be entitled to another trial merely because of this error occurring afterward?    No error will remain in the record after the circuit court shall have entered a proper judgment.

For the single error indicated the judgment below will be reversed and the cause will be remanded to the circuit court of Tazewell county, with leave to the prosecuting attorney of that county, on behalf of the People, to move the court for the entry of a proper judgment of sentence upon the verdict, and with directions to the court to allow such motion and re-sentence the defendant.

                                        *Reversed and remanded.*