No. 20,402.

FRED GARVEY, *Appellant,* v. W. L. BROWN et al., *Appellees.*

SYLLABUS BY THE COURT.

CRIMINAL LAW—*Indeterminate Sentence—Parole—Official Discretion of Prison Board.* Under the indeterminate sentence act (Crim. Code, §§ 272a-272i) the granting or withholding of a parole is a matter resting within the sound official discretion of the prison board, subject to the limitations expressed in the statute.

Appeal from Leavenworth district court; JAMES H. WENDORFF, judge. Opinion filed November 11, 1916. Affirmed.

*Lee Bond,* of Leavenworth, for the appellant.

*S. M. Brewster,* attorney-general, and *James P. Coleman,* assistant attorney-general, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one of mandamus to compel the prison board to grant the plaintiff a parole. A motion to quash the alternative writ was sustained, and the plaintiff appeals. The question is whether or not it becomes the mandatory duty of the prison board to grant a parole if the statutory conditions have been complied with.

. The plaintiff was convicted of the crime of assault with intent to kill, and was sentenced to imprisonment for a period of from one to ten years. The substantive part of the petition follows:

"Plaintiff further alleges that during the time he has been so confined in the said penitentiary he has obeyed all rules and regulations of said institution, and that no charge of misconduct has been brought against him, and that he had never been confined in any penitentiary or convicted of any felony prior to the conviction herein mentioned; that he has served the minimum time fixed by law for the crime for which he was convicted, and that he has duly made application to the above-named defendants as a board of parole, to be paroled from said institution, and that he has produced to said board satisfactory evidence that arrangements have been made for his honorable and useful employment while upon parole in some suitable occupation, and that a proper and suitable home, free from criminal influence has been provided for him upon his release from said penitentiary on parole; but that notwithstanding said facts the said prison board have arbitrarily and illegally refused to grant the same."

Garvey v. Brown.

The indeterminate sentence law (Gen. Stat. 1909, §§ 6837-6845, Crim. Code, §§ 272a-272i) looks to the rehabilitation of persons imprisoned in the state penitentiary as law-abiding and useful members of society. To this end, the judge, before whom a prisoner was tried, and the county attorney, are required to furnish information relating to his disposition, character, associates, surroundings, and career, and other matters tending to throw light on whether or not he is capable of again becoming a good citizen. The prison board is required to adopt disciplinary regulations which will conduce to the welfare of prisoners, prevent them from returning to criminal courses, secure their reformation, and make them self-sustaining. A complete physical, mental and moral diagnosis of each prisoner is made when he enters the penitentiary, and the result is entered on a register kept for that purpose. On this register subsequent minutes are made from time to time, showing the method of treatment employed, improvement or deterioration in character, alterations affecting situation and standing, and other pertinent facts. (Gen. Stat. 1909, § 6840.)

The statutory grant of authority to parole reads as follows:

"The said prison board shall have power to establish rules and regulations under which prisoners within the penitentiary may be allowed to go upon parole outside the penitentiary building and inclosure, but to remain while on parole in the legal custody and under the control of the prison board, and subject at any time to be taken back within the inclosure of said penitentiary. *Provided,* That no parole shall be granted in any case until the minimum term fixed by law for the offense has expired. And full power to enforce such rules and regulations and to retake and reimprison any inmate so upon parole is hereby conferred upon the warden, whose order, certified by the clerk of the prison, with the seal of the penitentiary attached thereto, shall be a sufficient warrant for the officer named in it to authorize such officer to apprehend and return to actual custody any conditionally released or paroled prisoner, and it is hereby made the duty of all officers to execute said order the same as ordinary criminal process. *Provided,* That no prisoner shall be released on parole until the said prison board shall have made arrangements, or shall have satisfactory evidence that arrangements have been made, for his honorable and useful employment while upon parole in some suitable occupation, and also for a proper or suitable home, free from criminal influence." (Gen. Stat. 1909, § 6841.)

Section 6842 provides that no petition or other form of application, for either a parole or for final discharge, shall be

entertained.   Section 6845 provides that all paroles shall be approved by the governor before they become effective, and that no prisoner shall be eligible to be paroled who has already served two terms in any penitentiary.   Section 6842 provides that a prisoner who, in the opinion of the warden, has served six months of his parole acceptably, and given evidence of his trustworthiness, shall, if not incompatible with the welfare of society, be certified by the warden to the prison board for final discharge.   The prison board considers the case and decides whether or not final discharge shall be recommended.   If made, the recommendation is made to the governor.   If he approve, he commutes the sentence, to take effect at once, or at such time as he may think best.   Section 6844 provides for retaking paroled prisoners who have become delinquent.

The plaintiff's contention is that a parole is a reward which may be earned by complying with the statutory conditions. If the reward be thus earned, it can not be denied so far as the prison board is concerned and he is entitled as a matter of absolute right to have a parole go to the governor for his approval or disapproval.   This contention is based on certain decisions of the Kentucky court of appeals interpreting the statute of that state (Acts, 1910, ch. 16) relating to the parole of convicts: *Wilson v. Commonwealth,* 141 Ky. 341; *Board of Prison Comm'rs v. Smith,* 155 Ky. 425; *Board of Prison Comm'rs v. De Moss,* 157 Ky. 289.

Section 1 of the Kentucky statute states that the board of penitentiary commissioners shall have power to parole persons confined in the penitentiary, to retake paroled prisoners under named conditions and when in the opinion of the board the welfare of the prisoner or of society demands, and to discharge finally.   Section 2 reads in part as follows:

"No person so confined shall be eligible to parole, or entitled to the provisions of this act, until he shall have served the minimum term of imprisonment provided by law for the crime for which he was so committed, except prisoners committed for life, who shall have actually served five years; nor unless he shall have been obedient to the rules and regulations of the institution in which he is confined for at least nine consecutive months next preceding the date of his parole; nor until he shall have secured, or there shall have been secured for him, some respectable employment with some responsible person or concern at a compensation sufficient to render him self-sustaining. (Acts, Ky. 1910, ch. 16.)

Section 8 relates to final discharge, and contains a provision which reads as follows:

"But nothing in this act shall be construed as entitling such paroled prisoner to such final discharge, except at the discretion of the said board."

In the decisions referred to the court made a point of the fact that "discretion" was expressly reserved to the prison board in section 8, but not in section 2. The substantial grounds of the decision were, however, that uplift rather than punishment is the chief purpose of detention, that this purpose may be furthered by offering a reward for good conduct in the form of an enlargement of liberty, and that section 2 guarantees to the convict his reward for good behavior.

In the case of *Wilson v. Commonwealth,* supra, it was said:

"When the act thus provides that no person shall be eligible to parole except on certain conditions, it necessarily means that those who comply with the conditions shall be eligible to parole. The act, therefore, defines who shall be paroled and does not commit to the commissioners arbitrary power, but imposes on them the duty to parole the prisoners whom the act declares eligible to parole, and this duty the board of prison commissioners may be required in a proper state of case to perform. Manifestly the standard fixed by these sections is so unmistakable in meaning and specific in character, as to enable the convict to know what his conduct must be to entitle him to the parole or discharge, and also to enable the board to know what will entitle him to either." (p. 351.)

With great respect for the court of appeals of the state of Kentucky, this court is constrained to say that it does not feel at liberty to use the method employed in reaching the foregoing conclusions. The provision of section 1 of the Kentucky statute, whereby a paroled prisoner may be rearrested and reconfined when, in the opinion of the board, the welfare of the prisoner or the welfare of society demands, was ignored in the discussion. While the word "discretion" was not used, as wide a latitude was allowed the board as in section 8, and the difference between discretion to parole a prisoner on one day and discretion to reimprison him on the next day does not seem very substantial. There is no express language in the act stating it to be the duty of the prison board to parole any one, and limitations on the power of the board, whereby the cases of certain prisoners are entirely withheld from consideration, do not, under any familiar rule of interpretation or

of logic, constitute a positive mandate to parole others. Doubtless early release from confinement is an inducement to good conduct, but conduct merely submissive to rules of prison discipline does not of necessity indicate reformation of character, any more than faithful attendance at church of necessity indicates moral and religious character. Although a person sentenced to a term of from one to ten years may have broken no prison rule, it may be quite incompatible with his own welfare and with the welfare of society to parole him at the end of one year.

Besides what has been said, the scheme of the Kansas stat-. ute is quite different from that of the Kentucky statute. In the Kansas statute, as in the Kentucky statute, there is no express direction to parole anybody, but the instances in which no parole shall be granted are not grouped and categorically stated. They are scattered throughout the act as provisos and independent prohibitions. These provisos and prohibitions are not inserted so that a prisoner may know just what he shall do to earn a parole, because the prison board is given authority to establish rules beyond those prescribed by the legislature, under which paroles may be granted. Because the prison board is given authority to regulate the granting of paroles in all cases except those expressly reserved by the statute, the reservations were not made to enable the board to know what will entitle a prisoner to a parole. The matter of conformity to rules of prison discipline is not mentioned in the statute as a qualification for parole. A prisoner is not permitted by himself or others to bring up the subject of his parole, by petition or other form of application. After the prison board has concluded to parole, the governor has authority to consider the case and to approve or disapprove.

The Kansas indeterminate sentence statute was enacted in 1903 and was among the earlier laws on the subject. The need for a more flexible and beneficial system of penal sanctions was clearly grasped, but a sufficiently extensive fund of definite and classified experience in the administration of such a system had not been accumulated to warrant the legislature in doing more than adopt the system and settle some of the more obvious details. The extreme rigidity of the old system was one of the very things to be demolished. The success or

failure of the new system depended on its administration, and
this was committed, except for a few directions and limita-
tions, to the invention, good judgment and discretion of the
prison board, the warden of the penitentiary, and the gover-
nor, all coöperating for the welfare of the delinquents and for
the protection and welfare of society.

The court is already committed to the foregoing interpreta-
tion of the statute, which it still regards as sound. In the case
of *In re Howard*, 72 Kan. 273, 83 Pac. 1032, it was held that
under the indeterminate sentence act the extreme penalty is
imposed, but provision is made for its mitigation. Concern-
ing the subject of mitigation, the court said:

"There are no provisions in the law under which the appellant was
sentenced entitling him to any reduction of time for good behavior, as
matter of right. There are provisions authorizing the prison board to
establish rules and regulations under which prisoners may be allowed to
go upon parole after the expiration of the minimum time for which they
were sentenced, and by which they may be discharged six months after
being paroled, but these are all matters of favor to be determined by the
prison board, the warden, the judge who passed sentence, and the gov-
ernor." (*The State v. Tyree,* 70 Kan. 203, 207, 78 Pac. 525.)

The expression "matters of favor" was used in opposition
to the expression "matter of right." In the highest and truest
sense, parole and discharge, under the indeterminate sentence
law, are not matters of favor at all. The state penitentiary is
a great character clinic maintained for the welfare of society,
to be secured through the detention, correction and develop-
ment of those sentenced to confinement there because of un-
social conduct. Whenever sufficient strength and probity of
character are indicated, after the minimum period of deten-
tion has elapsed, the prison bounds are enlarged by parole, not
as a matter of grace or even of reward, but because the proper
degree of moral progress has been achieved, and as the next
stage in the treatment administered. When, after six months,
such progress has been made that the paroled offender may be
trusted, with safety to himself and to society, to govern his
own conduct according to his own motives, the purpose of his
restraint has been accomplished, and he is discharged. The
law, however, does not undertake to determine definitely the
time when a parole or a discharge shall be granted, or to
enumerate indicia of trustworthiness which shall be sufficient

to require parole and discharge. These are subjects committed to the sound official judgment and discretion of those appointed to administer the law.

Such being the meaning of the statute, as the court understands it, the plaintiff's petition stated no cause for the issuance of the alternative writ of mandamus, and the judgment of the district court quashing the writ is affirmed.