Phillip **THOMPSON**, Petitioner,

v.

Marcell **GRAHAM**, Warden Utah State Prison, Respondent.

No. C–179–55.

United States District Court

D. Utah, Central Division.

Dec. 12, 1956.

Phillip Thompson, pro se.

E. R. Callister, Jr., Atty. Gen. of the State of Utah, Walter L. Budge, Asst. Atty. Gen. of the State of Utah, for respondent.

**CHRISTENSON, District Judge.**

Petitioner, a state prisoner, asserts that a state statute reducing good-time allowances is being given an ex post facto application as to him and that he is being deprived of his liberty without due process of law. The State's motion to quash a similar petition heretofore was granted on the ground that the petitioner had not exhausted his state remedies, Thompson v. Graham, D.C.D.Utah, Central D. 1956, 138 F.Supp. 544. Petitioner has fruitlessly pursued those remedies to the required extent, a writ of certiorari to the Supreme Court of the United States now having been denied, Thompson v. Graham, 352 U.S. 849, 77 S.Ct. 69.

Admissions in the return of the respondent warden to the writ issued in response to the second petition, documentary evidence, and stipulations of fact at the hearing establish the following facts: On November 25, 1946, petitioner pled guilty in the state court to a charge of murder in the second degree and was sentenced to a fixed term of sixteen years. On December 2, 1946, the petitioner commenced service of this sentence in the Utah State Prison. At the time of the commission of the offense and when he entered his plea of guilty he had the understanding that if he conducted himself properly he would be entitled to good time in accordance with the schedule of good-time allowances then in effect. Comp.Laws Utah 1943, § 67-0-11. His conduct while in prison has been such as to entitle him to whatever good-time allowances are applicable and he has never been deprived by his conduct of good time under either the old or the new schedules. If he were granted good time under the old schedule, his sentence would have expired on or about October 3, 1955. However, in 1951 the statute with regard to good time was amended, whereby allowable good time was sub-

stantially reduced. Laws of Utah 1951, Ch. 74, § 1, Utah Code Annotated 1953, § 77-62-10. Since the effective date of the new legislation the respondent warden and the state Board of Pardons have applied that reduced schedule of good-time allowances. By such application the petitioner would not now be entitled to his release. He is still confined by the respondent.

It is a reasonable and necessary inference from the evidence and the entire tenor of the argument, and the Court finds, that the failure to release the petitioner has not been by reason of any exercise of discretion by the Board of Pardons based upon petitioner's conduct or any question as to his rehabilitation, but has been solely as a result of the idea, now urged by counsel for the State, that the good-time allowance cannot be considered a part of the original sentence, and that the law with regard to that allowance may be changed at any time and the new law applied without infringement upon constitutional rights. It is because, and only because, of this contention that the respondent now restrains petitioner of his liberty.

The State calls attention to art. VII, § 12, Constitution of Utah, granting authority to the Board of Pardons to remit fines and forfeitures, commute punishments and grant pardons after conviction in all cases except treason and impeachment; it relies upon Cardisco v. Davis, 91 Utah 323, 64 P.2d 216; McCoy v. Harris, 108 Utah 407, 160 P.2d 721 and Connors v. Pratt, 38 Utah 258, 112 P. 399, for its contention that provision for good time off cannot be a part of the sentence. It is argued that the time of the release of a prisoner or whether any good time is to be allowed is wholly in the discretion of the Board of Pardons whose decision cannot be curtailed by the Legislature, and that prisoners are not entitled to any good-time allowances as a matter of law.

It is unnecessary to dwell upon these contentions, or the fact that the authorities relied upon by the State involve indeterminate sentences for the most part

rather than the type of sentence imposed upon Thompson in accordance with the existing law governing the punishment for second degree murder, Comp.Laws of Utah 1943, § 103–28–4, Utah Code Annotated 1953, § 76–30–4. Nor is it necessary to explore the interesting questions left unanswered by the Utah decisions, whether the Board of Pardons could legally terminate a sentence, without reference to the parole or pardoning power, prior to the expiration of the minimum term imposed by the Court or provided by the Legislature, or whether it could retain in custody a prisoner beyond the maximum term imposed by the Court or provided by the legislative enactment. The answers seem obvious. Yet we are not concerned here with the power of the Board of Pardons but rather with the idea that this power has been limited by the retroactive application of a new good-time schedule. It is interesting to note in passing that when a retroactive application was directly involved and the contentions between the State and the prisoner were reversed, the Supreme Court of Utah recognized the principle that the law existing at the time the offense was committed governed rather than subsequent legislation with reference to good time. Ex parte Clawson upon Habeas Corpus, 5 Utah 358, 15 P. 328.

■■■ It is true that we must accept the meaning of the state statute as interpreted by the highest court of the state, Hebert v. State of Louisiana, 272 U.S. 312, 47 S.Ct. 103, 71 L.Ed. 270, but the consequences of that meaning, the validity of the statute as so interpreted, and its application to the petitioner cannot be finally determined by the state tribunal contrary to constitutional rights and limitations. As stated in Lindsey v. State of Washington, 301 U.S. 397, 57 S.Ct. 797, 798, 81 L.Ed. 1182:

"This Court, in applying the ex post facto prohibition of the Federal Constitution to state laws, accepts the meaning ascribed to them by the highest court of the state. But when their meaning is thus established, whether the standards of punishment set up before and after the commission of an offense differ, and whether the latter standard is more onerous than the earlier within the meaning of the constitutional prohibition, are federal questions which this Court will determine for itself. Cummings v. [State of] Missouri, 4 Wall. 277, 320, 18 L.Ed. 356, reversing State v. Cummings, 36 Mo. 263, 273; Kring v. [State of] Missouri, 107 U.S. 221, 223 [et seq.], 2 S.Ct. 443, 27 L.Ed. 506. To answer them we compare the practical operation of the two statutes as applied to petitioners' offense."

■■ Technical distinctions are unsound where retroactive legislation results in a serious disadvantage to a substantial right of a prisoner under the law as it stood when the offense was committed. See Cummings v. State of Missouri, 71 U.S. 277, 4 Wall. 277, 18 L.Ed. 356. A law is ex post facto, within the meaning of the Constitution, when passed after the commission of the crime in question and which in relation to that offense or its consequences, alters the situation of the party to his detriment. Kring v. State of Missouri, 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506; see also Thompson v. State of Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061; Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L. Ed. 366; Burgess v. Salmon, 97 U.S. 381, 24 L.Ed. 1104; Calder v. Bull, 3 Dall. 386, 3 U.S. 386, 1 L.Ed. 648; Lindsey v. State of Washington, supra. A change in an existing criminal statute determining a right or privilege adverse to an accused is ex post facto. People ex rel. Pincus v. Adams, 274 N.Y. 447, 9 N.E.2d 46; State v. Rowe, 116 N.J.L. 48, 181 A. 706. Where the standard of good-time credits to a person under a statute at the time of commission of a crime is different than at the time of possible release, the application of the latter statute would be unconstitutional. Dowd v. Sims, 229 Ind. 54, 95 N.E.2d 628; Murphy v. Commonwealth, 172 Mass. 264, 52 N.E. 505, 43 L.R.A. 154; cf. State of

Kansas v. Tyree, 70 Kan. 203, 78 P. 525. Such, too, has been held the case where a statute results in the increase of either the minimum or the maximum provision of an indeterminate sentence law, even where an accused could receive the same sentence under either statute because of the discretion allowed some authority. This rule has been followed where the statutes involved discretionary power since they would entail a change of possible disadvantage to the committed person. In re Lambrecht, 137 Mich. 450, 100 N.W. 606; People of United States ex rel. Umbenhower v. McDonnell, D.C.N.D. Ill.E.D.1934, 11 F.Supp. 1014; Andrus v. McCauley, D.C.E.D.Wash.S.D.1936, 21 F.Supp. 70. Here the alteration of petitioner's situation is not merely theoretical. It has been so changed as to already result in his detention for more than a year beyond what would have been the expiration date of his sentence had the new statute not been given ex post facto effect. No one can doubt from the undisputed record that if the Legislature had not amended the good-time schedules, Thompson would now be a free man.

It is not enough to justify the infringement of a constitutional right to say that under the law as interpreted by the state court such infringement was discretionary. It is not enough to say that under other circumstances the good-time allowance could be withdrawn from a prisoner at the discretion of the Board because of failure of rehabilitation or because of bad conduct or for any other reason which might impel the Board without violence to the Constitution to withold the good-time allowance. The fact in this case is that there has been no such exercise of discretion. Implicit in the whole context of the case is that the petitioner has not been discharged heretofore because the good-time allowances which had been specified by the Legislature at the time of his sentence were subsequently changed; and because under the new legislation, his good-time allowances which have been granted to the full extent thereby authorized are not sufficient to permit his discharge, and because the old schedule of good-time allowances has been repealed. This is clearly an ex post facto application.

The keystones of the State's argument are that it is sovereign within its proper sphere and that the retention in custody of the petitioner is not by virtue of any retroactive statute but because of the complete discretion vested in the Board of Pardons without reference to the statute. The validity of both points in principle is refuted in Cummings v. State of Missouri, supra, in the following language, 4 Wall. at pages 318–325, 18 L.Ed. at pages 361–363:

> "We admit the propositions of the counsel of Missouri that the states which existed previous to the adoption of the Federal Constitution possessed originally all the attributes of sovereignty; and they still retain those attributes, except as they have been surrendered by the formation of the Constitution, and the amendments thereto; that the new states, upon their admission to the Union, became invested with equal rights, and were thereafter subject only to similar restrictions, and that among the rights reserved to the states is the right of each state to determine the qualifications for office, and the conditions upon which its citizens may exercise their various callings and pursuits within its jurisdiction.

> "These are general propositions, and involve principles of the highest moment. But it by no means follows that, under the form of creating a qualification or attaching a condition, the states can, in effect, inflict a punishment for a past act which was not punishable at the time it was committed. The question is not as to the existence of the power of the state over matters of internal police, but whether that power has been made in the present case an instrument for the infliction of punishment against the inhibition of the Constitution."

" * * * The Constitution deals with substance, not shadows. Its inhibition was leveled at the thing, not the name. It intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment, under any form, however disguised. If the inhibition can be evaded by the form of the enactment, its insertion in the fundamental law was a vain and futile proceeding."

The natural reluctance of this Court to assume to interfere in any way with state authority cannot justify disregard of its duty as it sees it, to sustain rights guaranteed to an individual by the Constitution of the United States. Being convinced that the defendant is being held by state authority solely by reason of an ex post facto application of state law to him contrary to art. I, § 10, Constitution of the United States, the respondent is ordered to discharge him. A stay for a period of ten days is granted in order to afford opportunity for an appeal should respondent be so advised.