No. 27,404.

THE STATE OF KANSAS, *Appellee,* v. E. C. CROW, *Appellant.*

(257 Pac. 735.)

SYLLABUS BY THE COURT.

BANKS AND BANKING — *Embezzlement or Fraud of Officer — Sufficiency and Admissibility of Evidence—Instructions.* In the prosecution of an officer of a bank for embezzlement, etc., under R. S. 9-140, the record is examined, and it is *held,* (1) there is competent, substantial evidence to support the verdict of guilty on each of the counts, (2) the instructions given contained no material error, and (3) the rulings of the court on the admission of evidence were not erroneous.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed July 9, 1927. Affirmed.

*Charles C. Calkin,* of Kingman, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *Clark A. Wallace,* special assistant attorney-general, and *Paul R. Wunsch,* county attorney, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: E. C. Crow has appealed from a conviction on nine counts of an information charging him with embezzling, abstracting and willfully misapplying moneys, funds, securities and credits of the First State Bank of Cunningham, of which bank he was cashier, director and managing officer, in violation of R. S. 9-140. He contends (1) that the evidence was insufficient to sustain the verdict on the several counts, (2) that the court erred in refusing to give proper instructions requested, and in giving improper instructions, and (3) that improper evidence prejudicial to him was erroneously admitted.

A brief general statement is as follows: In the town of Cunningham there were two state banks. One of them, the Cunningham State Bank, failed in 1922, and in July, 1923, the other one, the Farmers State Bank, failed. E. L. Allen, who, either as receiver or special bank commissioner was in charge of several failed banks,

Embezzlement, 20 C. J. pp. 482 n. 39, 486 n. 60, 490 n. 84.

was by the bank commissioner, Carl J. Peterson, appointed special deputy bank commissioner in charge of the Farmers State Bank. The appellant was appointed special deputy bank commissioner to assist Allen in the affairs of the Farmers State Bank, and together they handled the business until in December of that year, when he was appointed receiver, and thereafter had general charge of the assets of the bank and proceeded to liquidate it. Appellant, and others, organized a new bank. In September, 1923, the First State Bank of Cunningham was chartered and soon thereafter began business, with appellant as its cashier and chief managing officer. He continued, however, as receiver of the Farmers State Bank, endeavoring, among other things, to collect its notes. In October, 1924, he had the notes of the Farmers State Bank, which up to that time he had been unable to collect, appraised by three residents of Cunningham, the appellant giving the appraisers such information as he had concerning each of the notes. Among them were the Ed and Joe Conley notes aggregating $8,000, appraised at $1,000; the Harry Renner notes aggregating $2,632, appraised at $400, and many other notes appraised at correspondingly nominal sums, or as being worthless. In November, 1924, appellant procured the bank commissioner to apply to the district court for authority to sell the remaining assets of the bank. Appellant verified the application, stating the representations therein were true and that the order should be granted. Among other things the application stated:

"The character of the assets remaining in the hands of the receiver is generally as follows: Numerous customers' notes, the makers and indorsers of which are either insolvent or have moved to parts unknown, or have died or whose property is exempt or so heavily encumbered that same cannot be subjected to the satisfaction of the said bank, and said notes were either wholly unsecured or the security, where any formerly existed, has been exhausted or has depreciated or otherwise become of little or no value."

Appellant procured an order to sell the remaining assets of the Farmers State Bank, the sale to be conducted by special receivers appointed for that purpose. Appellant obtained permission to become a purchaser at such sale. He associated with him H. J. Adams, who did the bidding for him, and at the sale bought notes, including the Ed and Joe Conley notes, of the aggregate face value of about $165,000 for $6,440. He also bought the Harry Renner notes for $400. Within sixty days after his purchase of these notes he got in touch with the makers of a number of them, had the notes

renewed for substantially the original amounts, turned them into the First State Bank and got the money on them, which money he applied to his own use. In this way he got from the bank more than $50,000. Two counts in the information, the first and the third, pertain to two of the notes above mentioned. The Ed and Joe Conley notes above mentioned formed the basis of the first count in the information. Appellant had them renewed for $8,000. For some reason, not disclosed, a credit of $1,500 was indorsed on one of them. They were placed in the bank and a credit for $6,500 was entered in the name of J. M. McDonald. This was perhaps a fictitious name; no one by that name was known in the vicinity. At any rate, the amount of this credit was traced to appellant. On this count it was charged that the notes were of little or no value, that appellant knew them to be so. The third count makes a similar charge as to the Harry Renner notes, on which appellant obtained $2,000 from the bank. Evidence as to the other notes above mentioned was introduced for the purpose of showing appellant's wrongful intent in the matters charged in these counts.

Early in 1925 the First State Bank was needing money. Crow did not like his bank statements to show large rediscounts. T. J. Long, vice president of the bank, and Crow—who as Long & Crow had been transacting some business as partners—took the bank's notes to the amount of $25,000, used them as collateral to their own notes, and thereby borrowed $25,000 at one of the banks at Kansas City, which money they turned into the First State Bank in payment of the notes taken from the bank by them. The notes they took were charged off the books of the First State Bank, as having been sold to Long & Crow, and the cash received was credited. So far this transaction was not subject to criticism—the bank was fully paid for its notes. A few months later Long & Crow, having collected nearly $7,800 of the notes they had put up as security at Kansas City, desired to make a payment of $10,000 on their notes there. Crow had the First State Bank make a loan to Long & Crow of $2,362.84, which sum was placed to their credit in the bank and used by them in making their Kansas City payment. The note given by Long & Crow for this loan was not shown on the record of the bank's bills receivable, nor placed in the note case. Only a "memorandum note" or "credit slip" was made of this item, and it later disappeared. A bank examiner found the note case $2,225

short and required that the note case be put in balance. Crow placed in the note case a note for $1,226.22, a note for $500, and credited with an "interest error" of $468.07, which brought it almost to balance. These two notes were worthless; where they came from seems a mystery; they had not previously been the property of the bank. In the second count Crow was charged with having embezzled, abstracted and willfully misapplied the Long & Crow note representing the loan to them of $2,362.84.

The fifth count deals with the Gatlin note, representing a difference due Crow in a trade of some Colorado land to Gatlin for property in Hutchinson. The note was due in three years, bore 6½ per cent interest, was made direct to the First State Bank and the amount of it, $900, credited to Crow. It was secured by a trust deed on the land traded Gatlin, but it developed that Crow had no valuable interest in the land he traded to Gatlin, the trust deed was of no value as security, and the note was worthless.

The sixth count relates to a Montgomery note of $1,400, made to the bank and the amount credited to Crow. Crow procured this in some kind of a speculation in oil leases engaged in by him and Montgomery.

The eighth and ninth counts relate to the notes of V. E. and W. S. Gibbons. They were stockholders in the First State Bank when it was organized, having given notes to the bank for the stock issued to them. Eventually most of this stock was transferred to Crow, and the Gibbons notes to the bank were greatly reduced. But Gibbons and Crow appeared to have had much business together. In September, 1924, they settled, and Gibbons was indebted to Crow nearly $4,500. Crow took V. E. Gibbons' note for $2,220.73 and W. S. Gibbons' note for $2,250. He turned these notes to the bank and took credit for them. Gibbons and Crow together owned an interest in some Gray county land, the title of which was in the name of another. Gibbons' interest in this land was supposed to secure these notes, but when the land was disposed of some months later it developed either that Gibbons had no substantial interest in the land, or Crow got hold of it and used it for some purpose other than paying the note to the bank.

The tenth count relates to the note of B. D. Crow, wife of appellant. On June 29, 1925, B. D. Crow's demand note for $2,500 was taken into the bank and the full amount credited to appellant.

There is much in the record about B. D. Crow's notes, but it need not all be stated.

As to each of the notes above mentioned it was charged in substance that the notes were of little or no value when placed in the First State Bank by Crow, that this fact was known to him, and that by so doing Crow embezzled, abstracted and willfully misapplied the money, funds and credits of the bank.

The eleventh count relates to the bank building of the old Cunningham State Bank bought by Crow from the receiver of that bank for $3,000, and on the same day, or within a few days, Crow placed it among the assets of the First State Bank for $7,500, taking credit to himself for that sum, out of which he paid the purchase price, leaving a personal profit to him of $4,500. In doing this he acted for the bank in purchasing the property and for himself in selling it.

Turning to the legal questions raised. It is first contended, and this contention is made as to each of the counts upon which a conviction was had, that the evidence is insufficient to sustain the verdict. Appellant makes a detailed analysis of the evidence relating to each count, and points out what seems to him a fatal hiatus in the evidence essential to a conviction. As to the counts relating to notes placed in the bank by appellant, it is argued that the evidence did not show the notes to be of little or no value, as alleged, at the time they were taken into the bank, and if the evidence can be said to show that, it is argued that the evidence did not show that appellant knew such was the case. The evidence is much too lengthy to attempt to state and analyze it in an opinion. We have examined it carefully. Appellant's point is not well taken. The evidence conclusively shows, not only that the notes in question were worthless, or practically so when taken into the bank, but that appellant knew that fact as to each of them, and that his purpose and intent in each instance was to enrich himself at the expense of the bank, its stockholders and depositors. Counsel cite cases that the evidence must be "legally sufficient." That is correct. No one should be convicted on suspicion. To sustain a conviction there should be competent substantial evidence to support the essential elements of the offense charged. But there is no lack of that here.

As to the second count it is argued that there is no evidence that a note was given for the loan of $2,362.84 to Long & Crow, or,

if given, there is no evidence that Crow was responsible for its being missing. It was further argued that the entire transaction referred to in this count was for the benefit of the bank; that the bank had never parted with the notes which Long & Crow took and put up as security at Kansas City. The jury was justified in finding that a note was made—Crow himself at one time so testified; also was justified in concluding that Crow abstracted it from the bank, since he was the chief managing officer of the bank, having access to the notes, and being at least one of the persons interested in removing the evidence of his obligation to the bank. The jury also was justified in concluding that when Long and Crow took the notes from the bank the same became their property and no longer belonged to the bank. They were charged off the books of the bank as though sold for cash, and none of them ever returned to it.

As to the eleventh count it is argued that no fraud was committed on the First State Bank by Crow selling to it the bank building of the old Cunningham State Bank, for the reason that the building was worth the money. There was evidence before the jury as to the value of the bank building. The jury passed on that question. Even if it were worth the money, the transaction cannot be said to be free from fraud.

The instructions are complained of. Because of the number of counts charged, the nature of the offenses and the volume of evidence, the instructions were necessarily numerous—there were sixty-five in all—and some of them quite lengthy. Counsel for appellant has combed these with diligence and picked out here and there sentences or phrases which he criticizes severely. We have carefully considered all the points urged and arguments made. There is nothing seriously wrong with the instructions given. In such a case it is not possible to state everything in one sentence or in one instruction. A few, not many, of the phrases standing alone are slightly inaccurate, but considered as a whole, as they must be, they fairly presented the case to the jury and fully protected all the legal rights of the accused.

Appellant complains that the court admitted in evidence the records of the sale of the remaining assets of the Farmers State Bank. These were competent to show Crow's knowledge of those notes and their value, also to show ownership of the notes in Crow. Neither was it error to receive the testimony of the witnesses who appraised those notes at Crow's request, the elements considered by

them in making the appraisement, the information furnished them as to each note by Crow, that there had been no material change in the value of the notes between the time they were appraised and the dates many of them were taken into the bank by Crow; nor was it error to permit these witnesses to refer to a carbon duplicate of the appraisement to refresh their recollection as to the amount of the appraisement of various notes. Complaint is made that the witness Long was not required to answer certain questions asked on cross-examination for the purpose of showing his prejudice toward appellant. The refusal to answer the specific questions, for the reason given, showed as much prejudice against appellant as any answer the witness could have made. Besides, perhaps the refusal was within the constitutional rights of the witness. At any rate, the ruling was within the sound discretion of the trial court. Other complaints as to the introduction of evidence have no substantial merit.

The judgment of the court below is affirmed.