No. 29,135.

THE STATE OF KANSAS, *Appellee*, v. F. C. WOODBURY, *Appellant*.

(294 Pac. 928.)

Opinion filed January 10, 1931.

*J. J. Schenck, E. R. Sloan, F. A. Sloan, C. P. Schenck,* all of Topeka, and *F. M. Pearl,* of Hiawatha, for the appellant.

*William A. Smith,* attorney-general, *Harry A. Lanning,* county attorney, *S. M. Brewster* and *Charles Rooney,* both of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal from a conviction and sentence for embezzlement on ten of the thirty-one counts charged in the information. With one exception the ten charges were for embezzlement on certain different dates of certain different amounts of money from the Citizens State Bank of Sabetha, the money being the property of the bank, with the intent to injure and defraud the bank while the defendant was the president and managing officer of the bank. The one exception was in the first count, where it was charged that the intent was to injure and defraud

the Citizens State Bank and one A. P. Shintaffer as the executor of the estate of James K. Shintaffer, deceased.

This action was originally brought in Nemaha county and was transferred to Brown county upon application for change of venue.

The ten counts on which there were convictions were Nos. 1, 2, 3, 7, 8, 15, 16, 17, 20 and 21. All the other counts were dismissed before the trial began.

In the first count it is charged that the defendant did unlawfully and feloniously embezzle, misapply and convert to his own use funds of the Citizens State Bank of Sabetha, to wit, the sum of $1,284, with the intent then and there to injure and defraud the Citizens State Bank and one A. P. Shintaffer as executor. This charge and all charges in this case are being prosecuted under R. S. 9-140, the pertinent part of which is as follows:

"Every president, director, cashier, assistant cashier, teller, clerk, officer or agent of any bank who embezzles, abstracts or willfully misapplies any of the moneys, funds, securities or credits of the bank, or who issues or puts forth any certificate of deposit, draws any draft or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, or who makes use of the name of the bank in any manner with intent in either case to injure or defraud the bank or any individual, person, partnership, company or corporation . . . shall be deemed guilty of a felony . . ."

The evidence shows that on January 27, 1928, a deposit slip in the handwriting of the defendant was issued and delivered to one J. O. Stahl for $1,284, and on January 31, 1928, a debit slip to the account of A. P. Shintaffer, executor, for the same amount was made without any money being paid in by Stahl or withdrawal by Shintaffer. The defendant contends he made loans for Shintaffer of the estate funds, and had done so for many years, and that he had authority from Shintaffer to withdraw from the account for his services in making such loans an amount not to exceed $2,000. Shintaffer denies having given any authority to withdraw from the account for any purpose except for making loans.

At the close of the state's testimony the defendant moved the court to require the state to elect upon what it relied for conviction, whether it was the intention of defendant to injure and defraud the bank or Shintaffer. This was taken under advisement and was renewed at the close of the testimony of defendant and then overruled. Of this ruling appellant complains, and in the same connection complains of the instruction given by the court

with reference to intent to injure and defraud, that it was to injure and defraud the bank and Shintaffer or either of them. Appellant insists there are two offenses charged in this count: one with intent to defraud the bank, and the other with intent to defraud Shintaffer, and there should have been an election, and further that the instruction permitted the jury to bring in a verdict of guilty where some of the jury might believe the intent was to defraud the bank, while others could not agree to that but believed it was with intent to defraud Shintaffer.

The case of State v. Tudor, 121 Kan. 762, 250 Pac. 296, is cited as authority for the necessity of an election. In that case there were several separate and distinct offenses, being unrelated sales of intoxicating liquor, and under such circumstances it was held there should have been an election. Here there could only have been one offense. There could only have been one taking and converting of the money. There was one sum of money, one taking and converting and the money belonged to one party, namely, the bank. This was what was charged and attempted to be established by the evidence of the state. The only possible alternative in the case is as to the intention to injure and defraud one or both of two parties. That does not make two offenses, and unless there were two there can be no election. If it were not for the specific language of R. S. 9-140, it might very properly be said no allegation as to intent would be necessary. (State v. Patterson, 66 Kan. 447, 71 Pac. 860.) Since there are not two offenses, either under the charge or the proof, it is not material whether the intention be to injure and defraud one or both of the parties named in the information. Again, intent is not generally susceptible of direct proof. It is generally inferred from all the facts and circumstances of the case.

"In conclusion it may be said that the law as to proof of intent is not different from the law in regard to proof of other facts, unless it may be in the general principle that a person is ordinarily presumed to intend the natural consequences of his actions." (8 R. C. L. 183.)

In embezzlement generally the intent is to defraud the owner of the property. Sometimes the injury may reach out to others, and if it does, the crime is neither enlarged nor diminished. It is the same crime and but one offense regardless of the number it injures.

The information alleged that the defendant was president and managing officer of the bank, and whether he was the managing

officer of the bank is immaterial, for the statute covers and includes all officers of banks.

The second count charges the defendant with embezzling and converting to his own use $2,000 from the funds of the bank on March 21, 1928, and the evidence shows, after the bank closed March 21 and it was determined that two of the officers should go to Topeka to confer with the bank commissioner about the condition of the bank, the defendant withdrew from the currency on hand in the bank the sum of $2,000. The defendant testified that he had inquired during the afternoon of his son as to the amount on deposit in the farm account and was informed there was something over $4,000 in the account. It was explained that the farm account belonged to the defendant and his son. Defendant testified that he wrote a check for the $2,000 and signed it as drawn on the farm account, and left it in the drawer. The son testified to some of the same matters and stated he saw the check. The check seemed later to have been lost, and defendant insists that he had an absolute right to check on this account and withdraw the funds shown to be in the account.

Appellant alleges error in the refusal of the court to give three instructions requested on this count. The first two were to the effect that unless the jury finds beyond a reasonable doubt that the defendant did not honestly believe that he had in the bank $2,000 on deposit in the farm account subject to his check, he cannot be convicted. The substance of the last one requested was that "unless you find beyond a reasonable doubt that the defendant did not issue a check and did not honestly believe he had that amount to his credit in the farm account, you must find the defendant not guilty."

The court in an early instruction explained fully and at length to the jury the term "fraudulent" in connection with the crime of embezzlement, which was fully defined, and then gave the ninth instruction, which is as follows:

"As to the second count in the information, you are instructed that if you believe from the evidence beyond a reasonable doubt that at the time alleged in the second count of the information, to wit, the 21st day of March, 1928, the said F. C. Woodbury was the president and managing officer of the Citizens State Bank of Sabetha, Kan., and that he did then and there feloniously take $2,000 of the funds of said bank and convert the same to his own use, with intent to defraud and injure said bank, then you should find the defendant guilty of embezzlement as charged in the second count of said information.

"You can remember this count as the one where it is claimed by the state that F. C. Woodbury embezzled $2,000 in cash from the bank the night he left Sabetha, and as the transaction or count in which defendant claims to have left his check for the $2,000 just before he left and after banking hours."

These instructions given did not in so many words contain the phrases urged by the defendant as to the issuance of a check, and honestly believing he had the money on deposit subject to check, but we think those points were fully covered in the instructions given. The definition of "fraudulent" is the opposite of "honestly believing." As the jury was told in the early instruction, it was with intent to defraud the owner.

Many authorities are cited holding that the giving of a check to withdraw money on deposit in a bank, although usual, is not absolutely necessary, and it is contended that if this check cannot now be found, or even if the jury should have believed it never had been given, it would not be a criminal act to withdraw money on deposit without the giving of a check. It would not be a crime for a depositor to withdraw deposits upon an oral application if the officers of the bank were satisfied to make the payment in that way, but here we have an officer of the bank withdrawing for himself $2,000 of the $7,000 cash on hand after conferring with the other officers about reporting the serious condition of the bank to the bank commissioner. Suppose there was no question about his having on deposit the full amount withdrawn, would he, as president of the bank, be permitted with impunity to prefer himself and take his own deposit out after the bank had closed its doors to the public?

As to there being on deposit at that time more than $4,000 in the farm account, the testimony shows that a balance of $4,296.20 was what was shown by the bank books, and that the defendant on March 8, 1928, issued to A. J. Lanning two checks, one for $2,570 and the other for $1,710, on this account. These checks were left in Mr. Lanning's safety deposit box in the bank and were not cashed, but were in the box when the bank closed.

In the third count the charge is the embezzlement of $1,150 of the funds of the bank on January 17, 1928. From the evidence it appears that on May 31, 1927, a debit slip in the handwriting of the defendant was placed against the account of Nettie Garber for $1,150, and on January 16, 1928, her account was credited with the same amount by drawing a debit slip against the rent account in

the bank. The defendant testified with reference to this charge to the effect that he had for many years been making loans for Mrs. Garber; that some had been made while she was absent, and he had written her about them; that she called at the bank about February 1, 1928, to talk over such business matters and while there examined the notes and other papers in her safety deposit box in the bank and was satisfied with everything done. He testified that he then sent for her ledger sheet, and with the ledger sheet before them he told her as follows:

" 'On May 31 I charged your account with $1,150, and on January 16 I gave you credit for $1,150, and I owe you the interest on that for that time.' She asked me if it had been in the bank if the bank would have paid her any interest. I told her no, not on a checking account. Then she said, 'I will not charge you any interest.' I had not had a conversation with Mrs. Garber prior to that relative to the $1,150. I called her attention to this item on the ledger sheet. She said it was all right."

The objections of the appellant to the evidence of Mrs. Garber introduced by the state, to the effect that before going away she had told the cashier of the bank she did not want any more loans made for her, and to the introduction of two ledger sheets, lose their force when the defendant himself confers with her about all the loans made for her recently and when it is shown that the $1,150 item here involved was not a loan that could possibly come within her request to the cashier, and when the defendant showed her the ledger sheet himself and told her about the $1,150 transaction, for which purpose the sheets were offered in evidence.

Appellant earnestly contends under this count, as in the first, there was error in the court refusing to require the state to elect upon which offense it would rely for conviction, the one occurring May 31, 1927, when the account of Nettie Garber was charged by a debit slip with $1,150, or the one occurring on January 16, 1928, when the rent account was charged with a cash item of the same amount and the account of Mrs. Garber credited with that amount. Again we must say, as we did in reference to the charge in the first count, there is only one crime charged and only one attempted to be established by the evidence, and that is the felonious taking and converting of the money of the bank to his own use. When was that done, if at all? It could only be at the first instance. The second at most was an adjustment of accounts and records. The tendency to lean toward the second event is because in the subse-

quent counts the claim of the state is that the rent account belonged to the bank in a special sense. But Mrs. Garber's account belonged to the bank just as much for the purpose of this case. Money deposited in a bank in an ordinary account is the property of the bank within the meaning of the section of the criminal act under which this charge is being prosecuted, as was said in the case of *State v. Wacker*, 120 Kan. 387, 243 Pac. 1026. It is said in 3 R. C. L. 519:

"In the case of a general deposit of money in bank the moment the money is deposited it becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor."

Appellant urges that the refusal of the court to give the two instructions requested in this connection was error. As to the first, directing an acquittal if the taking of the funds from her account was authorized or ratified by her, the authorization feature can hardly be pertinent because the testimony of the defendant is that he told her of having taken it nearly a year after it had been done, and as to ratification, she must have known the whole story before she could have effectively ratified the taking. When she heard part of the facts perhaps she did ratify the part she knew, and later apparently did not ratify. Her ratification could certainly not absolve the defendant from taking the property of the bank with intent to defraud the bank.

We think the refusal to give the other instruction requested, which had reference to the defendant having an interest in the rent account from which the reimbursement was made, was not error and will be considered further in connection with the subsequent counts.

The next five counts, Nos. 7, 8, 15, 16 and 17, concern what is called the "rent account," which it is charged belonged to the bank, and that the defendant entered debit slips against it for the payment of items that were not the obligations of the bank. Appellant complains of the giving and refusal of instructions concerning these counts and that there was insufficient evidence to show that the rent account belonged to the bank and thus support the verdict on these five counts. There was no controversy about the debit slips being for items that were not obligations of the bank, so the issue of fact was reduced in these counts to the question of whether or not the rent account belonged to the bank, and the question of intent.

The instructions requested by the appellant were properly refused because they went too far, by stating that the state must establish beyond a reasonable doubt that the defendant did not own any part

of the rent account. The remaining portions were given in substance by the court, to which the appellant objects for other reasons.

The court described the offense in the seventh count, after giving the names, dates and formal part, as follows:

". . . did take from the funds of said bank the said sum of $1,333.65 or any portion thereof, and convert said funds to his own use, or to the use of some one other than the said bank, and did apply said funds to the payment of interest on notes, loans or obligations on which the bank was not bound, then you should find the defendant guilty of embezzlement as charged in the seventh count of the information."

The same concluding words were used in describing the other four rent account charges, except the amount of money was different in each. The instructions given in this connection were as follows:

"Moneys deposited in a bank in a general or ordinary account become the property of the bank, and a part of its moneys, funds and credits, within the meaning of section 7, chapter 88, Session Laws of Kansas, 1927, set out in instruction No. 2. In such a case, when money is deposited in a bank, the ownership and custody of the money so deposited passes to the bank, and the bank thereby becomes indebted to the party lawfully entitled to withdraw it.

. . . . . . . . . . . . . .

"You are instructed that if the defendant honestly believed that he had sufficient funds belonging to him individually, in the rent account at the time the debit slips were issued, to take care of the debit slips issued against said account, evidencing the amounts alleged in counts 7, 8, 15, 16 and 17, that then you must find him not guilty, even though he did not actually have funds, sufficient in said rent account to take care of the debit slips, and if you have a reasonable doubt as to the belief of said defendant that he had sufficient funds in said account to take care of said debit slips, it is your duty to give him the benefit of such doubt and acquit him."

We think they correctly state the law on the issues here involved and cover substantially the points requested by the defendant.

The testimony of the officers of the bank describes the items in the rent account which belonged to the bank and those which did not, as far as they knew, and there was sufficient evidence to support the finding that it belonged to the bank aside from the simple fact of its being deposited in the bank and thereby becoming the property of the bank, although some part of the account did apparently belong to the defendant, which fact, as stated in the instructions given, would not authorize him to use such account for outside matters unless the defendant believed he had sufficient funds of his own in the account to take care of the debit slips issued by him.

"Moneys deposited in a bank in a general or ordinary account become the property of the bank, and a part of its moneys, funds and credits, within the meaning of R. S. 9-140.

"The president of a bank drew his individual check upon his personal account at the bank. When the check was presented for payment his account was insufficient to pay it, and he directed an employee to pay the check from the funds of the bank and to charge it to the account of another. *Held*, the embezzlement and misapplication and abstraction of the funds of the bank were done in his official capacity as president, within the meaning of R. S. 9-140, and not in his individual capacity." (*State v. Wacker,* 120 Kan. 387, syl. ¶¶ 2, 3, 243 Pac. 1026. See, also, *State v. Crow,* 124 Kan. 55, 257 Pac. 735.)

Count No. 20 charges the embezzlement of $1,081.67 of the funds of the bank on March 17, 1928. It concerns the collection of a note given by one Hartter to one Machamer for $2,000, for which a note for $2,000 supposed to have been given by George Kerr was substituted. It appears that a deposit slip was issued to one Grace Moser for this exact amount, $1,081.67, prior to the payment of the note by Hartter, and that thereafter several different entries were made in connection with the transaction, but the last is one giving Machamer credit for $960.33 which, together with $1,081.67, equals the amount paid by Hartter, $2,042. On June 17, 1927, this deposit to her account was entered on the books of the bank as a cash item marked "Jarvis," the name of the maker of the note on which she demanded payment of the bank and received it.

Count No. 21 charges the embezzlement of $3,500 of the funds of the bank on March 30, 1927. This concerns a certificate of deposit held by Mrs. Batey, which had for many years been renewed from time to time. She wanted to get six per cent for her money, and defendant claims to have arranged with her to loan it to a large cattle feeder who later changed his mind and declined to take it. A draft for $3,000 appeared to have been issued to one Ott for the payment of a note of one Vogelpohl for $3,000, in which note the bank was not shown to have been interested, and when it was paid the Vogelpohl note and the debit slip of five days earlier for the draft were placed in Mrs. Batey's box at the bank and the certificate of deposit was taken out and canceled. Later the notes of the defendant were substituted and placed in her box and other intervening entries and changes were shown. The defendant claimed to have had full authority from Mrs. Batey to make the changes and loan the money for her. The state claims that the

bank lost at least $3,000 by the transaction on March 30, 1927, when this draft was paid.

It is the earnest contention of the appellant in these two counts that the court erred in refusing to give the instruction requested as to the defendant having been fully authorized· to make the exchange of paper in the twentieth count authorized by Machamer, and in the twenty-first count by Mrs. Batey, and later ratified by Mrs. Batey. We think the matter of being authorized by these two parties is not material. Their part in the transaction is only a part of the complete history, as it is said in the briefs, as furnishing an offset. In the former case the taking of the money was when the cash item was entered to meet the checks of Grace Moser on her deposit inflated by the deposit slip. In the latter case the taking occurred when the draft for $3,000 was paid to take up the Vogelpohl note in the hands of Ott. The authorization of Machamer and Mrs. Batey, whose money later went toward making good to the bank for its loss, will not prevent the previous wrongful converting of ·the funds of the bank from being a crime, if wrongful.

Appellant requested the giving of several instructions stating the theory of the defendant as to the different charges, and complains that they were refused, and cites many authorities in favor of giving such instructions. In the same connection the instructions given are criticized for outlining the theory of the state but concluding without any comment as to the defense. We have already considered the refusal to give such instructions in connection with three of the counts, and the theory of the defendant is briefly included in the instructions as to the first and second counts, being instructions Nos. 8 and 9. Instruction No. 30, given substantially as requested, applies to the other five charges, those having to do with the rent account. In some of the instructions the negative of the state's theory follows the statement of the essentials of the charge. The theory of the defendant might very properly have been stated more at length, but we find no error in refusing the instructions requested.

Appellant complaints of the giving of instruction No. 33 concerning the defendant being a competent witness in his own behalf and adding thereto the right of the jury to take into consideration his interest in the case, thus singling him out and emphasizing the matter of his interest in the result of the trial, which it is claimed was

prejudicial to his interests, especially when the general instruction had already been given as to the rule for weighing the testimony of all the witnesses, and as to the interest in the case affecting their credibility, which rule applied to the defendant as well as all other witnesses and no differently as to him than any other witness. We adhere to the view expressed in the case of *State v. King,* 101 Kan. 189, 165 Pac. 665, by disapproving the giving of such separate and special instruction, yet, as in that case, we do not regard the giving of it as prejudicial error. The instruction given was as follows:

"By the laws of this state the defendant is made a competent witness in his own behalf, and as such has given testimony in this case. The fact alone that he is charged with crime does not disqualify him as a witness, but you may take into consideration his interest in the case, and all the circumstances which surround him, and give such credit as in your judgment he is fairly entitled to have given to his testimony."

Appellant alleges error in the refusal of the court to give instructions requested as to previous general reputation and good moral character of the defendant. Instead of giving those requested, the court gave an instruction covering this subject completely, but not in as great detail as in the ones requested. It is not necessary to recapitulate the principle and apply it to each and every feature of the case if the general application is clearly stated. We think, in this case, as was said in the closing paragraph of the case of *State v. Hall,* 111 Kan. 458, 207 Pac. 773, to which reference has been made in appellant's brief, that—

"The jury were properly told that they should consider the testimony covering the defendant's reputation for its bearing upon his credibility as a witness as well as upon the broader question whether there was reasonable doubt of his guilt. This was sufficient." (p. 460.)

Appellant insists that there was an abuse of discretion in permitting evidence of other similar transactions for the purpose of showing intent, and cites the case of *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081, where there were five counts, and something was said about the case itself furnishing enough items to sufficiently show intent, but the court concluded that the introduction of evidence as to the additional similar transactions in that case was not an abuse of discretion when the jury was properly instructed as to the limited purpose of such evidence, of which there is no complaint in this case.

"In a prosecution for embezzlement the court may, in its discretion, permit evidence of other similar transactions for the purpose of showing the intent, when it is made clear to the jury the purpose for which such evidence is received." (Syl. ¶ 3.)

In the same connection complaint is made of the overruling of the motion of appellant to strike out the evidence of C. W. Corman for the reason it was not in any way connected with any of the counts charged in the information. We think this comes within the discretionary rule above stated, and in addition thereto it appears from this evidence that there is some connection between the transaction which the witness Corman related and the Strahm matters involved in the twenty-first count.

Appellant insists that the verdict in the case is void because several days after it was rendered and the jury discharged the court permitted and directed, over the objection of the defendant, the changing of the word "Nemaha" in the caption of the instructions and the caption of the verdict to the word "Brown," so that the caption of both papers would show the trial as being in the district court of Brown county instead of Nemaha county. Cases are cited as to the making of changes in the substance of the verdict as the degree of offense before the discharge of the jury, and it is urged no change can properly be made after the jury has been discharged. This change was in no way prejudicial to the rights of the defendant. It was a formal matter only, concerning which there could be no dispute, and was merely to make the papers conform to the facts. The caption does not appear to be an essential part of either document. (R. S. 62-1447; R. S. 60-2917.)

"It is not error to overrule a motion for a new trial based upon the single ground that the verdict does not contain the verb 'find,' but reads, 'We, the jury . . . the defendant guilty as charged in the information.'" (State v. Wade, 56 Kan. 75, syl., 42 Pac. 353.)

"A verdict will be sustained as to form if the meaning and intention of the jury can be clearly ascertained therefrom." (State v. Pugh, 75 Kan. 792, syl. ¶ 4, 90 Pac. 792. See, also, In re McLean, 84 Kan. 852, 115 Pac. 647.)

This change in no way affects the substantial rights of the defendant and comes properly under the heading of technical errors and defects mentioned in R. S. 62-1718.

Our attention is called to the sentence having been imposed as to all ten counts under section 7, chapter 88, of the Session Laws

of 1927, which took effect June 1, 1927, and amended and repealed R. S. 9-140 and now takes the designation of R. S. 9-140, and which new act only changed the old section as to the penalty, which under the old law was from three to fifteen years, and under the new from three to fifty years. It has long been settled that the penalty imposed must be under the law as it stood when the offense was committed. In six of the counts here under consideration the offense was charged to have been committed prior to June 1, 1927, viz., counts Nos. 7, 8, 15, 16, 17 and 21. In count No. 3 the date alleged was subsequent to June 1, 1927, but the proof established a date of taking. and converting of property at a time prior to June 1, 1927. So the sentence imposed as to these seven counts was improper, being imposed under the new law instead of the old. This, however, is not a reversible error, but is such as can be corrected without a new trial by the trial court imposing a sentence as the law in existence at the time the crime was committed authorized. (*State v. Tyre,* 70 Kan. 203, 78 Pac. 525; *State v. Warner,* 93 Kan. 378, 144 Pac. 220, R. S. 62-1716.)

We conclude that the errors assigned were not such as would justify a reversal or new trial, but with a modification of the sentence imposed the verdict should be approved and judgment affirmed.

The judgment is affirmed, but the cause is remanded to the district court of Brown county with instructions to resentence the defendant, imposing the penalty in accordance with the law in effect at the time of the commission of the crime.

SMITH, J., not sitting.