Argued January 6, affirmed March 11, 1964

# STATE OF OREGON *v.* LEWIS

390 P. 2d 180

614

*William R. Thomas,* Lebanon, and *Ernest Lundeen,* Eugene, argued the cause for appellant. On the brief were Ernest Lundeen, Eugene, and Morley, Thomas & Orona, Lebanon.

*Robert J. McCrea,* Deputy District Attorney, Eugene, argued the cause for respondent. With him on the brief was William F. Frye, District Attorney, Eugene.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

SLOAN, J.

Defendant appeals from a conviction of the crime of conversion of public funds. Defendant had been a Justice of the Peace in Lane County. The funds he was alleged to have converted were funds received as forfeited bail, fines and fees and moneys held as bail and from small claims collections.

The statute, ORS 165.015, defendant was charged with violating reads:

> "Any person who receives any money, warrant or instrument in writing directing the payment of money for this state, or for any county, town, or other municipal or public corporation therein, or has in his possession any money, warrant or instrument in writing directing the payment of money belonging to such state, county, town or corporation, or in which it has an interest, and converts to his own use any portion thereof, or loans with or

without interest any portion thereof, or neglects or refuses to pay over or deliver any portion thereof as required by law, or when lawfully demanded so to do, shall be deemed guilty of larceny and shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years, and by fine equal to twice the amount so converted, loaned or neglected, or refused to be paid."

The indictment alleged defendant had received money for the state of Oregon and Lane county, that defendant did "* * * convert to his own use a portion of said money in the sum of $40.00."

The evidence revealed that it had been defendant's practice, as a Justice of the Peace, to keep cash money he received in his official capacity in his desk, a safe, and other places of safekeeping. His offense was committed when he withdrew $40 from the cash on hand and substituted his personal check therefor. There were not sufficient funds in his bank account, at the date of the withdrawal, to cover the $40 check.

■ Defendants most vigorous argument is that the evidence did not establish that the money belonged either to the state or Lane county. He claims that the money he held as unforfeited bail and from small claims collections belonged to private persons and was not money he had received for the state or county.

In a similar case, *State v. Gordon,* 1937, 146 Kan 41, 68 P2d 635, at 636, the court held:

"* * * it has been held that the moneys coming into the hands of a public officer, such as defendant here was, are held by him as a public fund, and when he converts them to his own use he violates the statute. See State v. Woodbury, 132 Kan. 22, 294 P. 928; and State v. Richardson, 138 Kan. 471, 26 P.(2d) 251. It was not of consequence in determining defendant's guilt whether the specific funds

taken would ultimately have gone to witnesses, jurors, or the State of Kansas."

In *Wiley v. State,* 1960, Okla, 349 P2d 30, also a like case, the court said the officer had received the money as an agent of the state and was impressed with a trust for the state's purposes. To hold otherwise, the opinion said, would make the state an instrument of "* * * chicanery for preying on trusting citizens."

Defendant Lewis held the money only by virtue of his office. It would be a strange thing if money deposited in a court could be embezzled with impunity merely because the ultimate recipient was a citizen rather than a public corporation.

■ Defendant places reliance upon language found in *State v. Cahill,* 1956, 208 Or 538, 561, 293 P2d 169, 298 P2d 214:

"* * * The plain purpose of the statute under which Cahill was tried and convicted is to protect the public against any use of public funds for any but public purposes. It applies not only to any money owned by a public corporation, but to any money in which it has an interest."

Defendant reads the quoted language as meaning that the statute (ORS 165.015) applies only to funds held by an official for public purposes. We do not glean the same idea from the opinion in *Cahill.* To the contrary we think the case holds that the statute applies to any money the official receives when acting for the purposes of his office. Many public officers, including justices of the peace, hold money which will eventually be delivered to a citizen or to a public corporation. The money is held for either the citizen or the public, only because the official is the person vested by law

with the authority to hold and keep such funds. The state and county, in this instance, are vitally concerned that any funds so held by an official actually reach the person for whom they are intended. We think it is clear that the state and county had a distinct "interest" in the money defendant had taken.

Secondly, defendant claims that he was not guilty of conversion because he merely changed one form of possession to another, i.e.; from the cash drawer to his pocket. Defendant insisted that there could not be a conversion until he disposed of some part of the money. Defendant presented this theory, in part, by a requested instruction that would have told the jury to find defendant not guilty if the "* * * defendant transferred funds from one type of possession to another type of possession * * *."

 The requested instruction was wrong. In essence, any embezzlement is a change from one form of possession to another. The requested instruction would literally have told the jury to acquit defendant. Instead, it was for the jury to decide if defendant transferred the funds from the cash drawer to his pocket as another form of safekeeping or if he made the transfer for his own purposes. The trial court properly instructed the jury as to this aspect of the case and properly rejected the tendered instruction.

 Other assignments claim error in admitting into evidence certain checks of defendant, including the $40 one before mentioned, found in the cash drawer, by auditors, on January 14, 1963, and other exhibits showing defendant's contemporary bank balance, against which the checks were drawn. That balance was not sufficient to cover the checks.

We understand defendant's argument to be that the

exhibits were not relevant to the issue of conversion. Defendant says that conversion requires not only the taking of public funds but the use of the funds as well; that defendant could not be guilty of conversion because he had not used the funds. In this case the exhibits were relevant. The state was justified in attempting to prove that defendant intended to use the public funds in his possession for personal use and that the checks were an attempt to cover by creating a fictitious balance of accounts. The exhibits were also relevant in that they reflected on defendant's claim that the money in his pocket was only one form of safekeeping. Had that been true the checks in the till would have been unnecessary. The fact that the exhibits may have been some proof of other offenses would not be material. *State v. Kristich,* 1961, 226 Or 240, 244, 359 P2d 1106, supplies the answer to this assignment.

Judgment affirmed.